**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AVERY DENNISON CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:07-cv-01268 |
| v. | ) | |
| | ) | |
| TORAY INTERNATIONAL, INC., | ) | JUDGE KATHLEEN O'MALLEY |
| | ) | |
| Defendant. | ) | |

**TORAY INTERNATIONAL, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS**
**AGAINST RENNER, OTTO, BOISSELLE & SKLAR UNDER 28 U.S.C. § 1927**

Defendant Toray International, Inc. ("Toray") respectfully submits this Memorandum in Support of its Motion for Sanctions Against Renner, Otto, Boisselle & Sklar ("Renner")[1] under 28 U.S.C. § 1927.

## INTRODUCTION

Renner represented Avery Dennison Corporation ("Avery") in the above-captioned case. Toray brings this motion to recover the excess costs, expenses, and attorney's fees that it has incurred as a result of Renner's conduct while opposing Toray's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, Motion to Transfer Venue in the above-captioned case. Toray also requests leave to take discovery of Avery and Renner to determine what basis, if any, they had for asserting personal jurisdiction over Toray at the time Renner filed Avery's Complaint.

---

[1] "Renner" includes both Renner, Otto, Boisselle & Sklar, LLP and the individual attorneys involved in this litigation.

Toray respects Avery's right to vigorously oppose Toray's Motion.  However, "zealous advocacy [by Renner] … does not amount to *carte blanche* to burden the federal courts by pursing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise 'unreasonable and vexatious.'"  *See Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir. 1986).  Even giving Renner the benefit of the doubt that they initially had a good faith basis for filing Avery's Complaint and opposing Toray's Motion, at some point their actions (and inactions) crossed the line from zealous advocacy to unreasonable and vexatious delay, thereby wasting Toray's and the Court's resources.  As such, Renner should be sanctioned under 28 U.S.C. § 1927.

## STATEMENT OF THE FACTS

Renner filed Avery's Complaint in this case on April 30, 2007.  Toray waived service in early June and agreed to meet with Avery to discuss the nature of Avery's claims.  Because the parties were in the midst of discussions, on August 28, 2007, Toray filed an unopposed Motion for an Extension of Time to Answer or Otherwise Respond to the Complaint.  Dkt. No. 8.  The Court granted Toray's Motion for an Extension of Time and ordered that a response to the Complaint be filed by September 27, 2007.

On that date, Toray filed its original Motion to Dismiss or Transfer, stating that Toray had no contacts with Ohio sufficient to warrant the exercise of personal jurisdiction.  Dkt. No. 9.  To support its Motion, Toray submitted the Declaration of Shigeo Fujii, which averred that Toray had no contacts with Ohio.  Dkt. No. 9, Exh. A.  Toray also moved to transfer the case to the United States District Court for the District of North Dakota and agreed to the exercise of personal jurisdiction in that forum.

For the rest of 2007 and into 2008, Judge Polster repeatedly urged the parties to settle. Ultimately realizing that Toray and Avery could not come to an agreement, Judge Polster set a briefing schedule for Toray's Motion and ordered Avery to respond by May 27, 2008. *See* Dkt. No. 19.

On that date, Renner filed Avery's Opposition to Toray's original Motion. Dkt. 21. Avery, through Renner, did not present any facts indicating that Toray was subject to personal jurisdiction in Ohio. Nor did Avery indicate that it needed any discovery to develop evidence relating to the issue of personal jurisdiction. Instead, Avery attempted to manufacture jurisdiction by using personal jurisdiction over Alien Technology Corporation ("Alien"), the party to which Toray sold the two allegedly infringing machines, to bootstrap personal jurisdiction over Toray. Alien is the defendant in a separate case, Civil Action No. 1:08-cv-00795, filed by Avery on March 27, 2008, almost one year after Avery sued Toray. Notably, Avery did not designate the Alien case as "related" to the Toray case, even though (i) Avery's basis for asserting personal jurisdiction over Toray relied solely on Toray's relationship with Alien; (ii) the same machines are at issue in both cases; and (iii) all of the patents presently asserted against Toray are also asserted against Alien.

Avery, through Renner, based its Opposition on three incorrect and misleading arguments. First, Avery incorrectly alleged that Toray had sought to obscure its ties with Alien, pointing out that Toray had worked with Alien since 1998, had co-developed an RFID tag manufacturing process with Alien, had signed a joint development agreement with Alien, and had invested in Alien. Toray, however, did not seek to obscure its ties with Alien and always maintained that its ties with Alien were irrelevant to the issue of Toray's contacts with Ohio. Instead of accusing Toray of concealing facts, Avery and Renner should have ensured that their

3

own house was in order—they never disclosed that Toray's ties with Alien were known to Avery, or that, like Toray, Avery had worked with Alien on projects involving RFID labels and processes and had invested in Alien's business.

Avery, through Renner, also accused Toray of "conceal[ing] its indemnity agreement with Alien—to preserve its motion to dismiss—until it was forced to reveal that agreement after Alien was sued." Dkt. No. 21 at 3. Renner and Avery, however, did not mention that if the indemnity agreement was relevant, which it is not, it did not become so until Avery sued Alien, almost one year after Avery sued Toray. Renner and Avery also failed to mention that they had independent access to this indemnity agreement from Alien's public securities filings.

Second, Avery, through Renner, suggested that Toray, in an effort to avoid the exercise of personal jurisdiction, had mischaracterized the true extent of Toray's involvement in the design of the accused machine. To support this allegation, Avery supplied the Court with excerpts from a presentation regarding "Toray's concepts of Alien™ Strap Attachment System" and implied that Toray assisted in the design of the allegedly infringing machines. Dkt. No. 21, Exh. A, B. Avery, however, did not mention that this machine, designed with the help of one of Toray's sister entities, was not the same machine as the machines at issue in this case.

Finally, Avery, through Renner, argued that the mere existence of an indemnification clause in Alien's form purchase order was sufficient to create personal jurisdiction over Toray, i.e., because the Court could exercise jurisdiction over Alien, the Court could also exercise jurisdiction over Toray. Dkt. No. 21 at 9-11. In doing so, Avery and Renner ignored well-settled case law that each defendant's contacts with the forum state must be assessed individually.[2] Avery and Renner cited three inapposite cases involving indemnity clauses,[3]

---

[2]  *See*, *e.g.*, *Calder v. Jones*, 465 U.S. 783 (1984); *Rush v. Savchuk*, 444 U.S. 320 (1980); *Lyman Steel Corp. v. Ferrostaal Metals Corp.*, 747 F.Supp. 389 (N.D. Ohio 1990).

failing to note that in each of these cases, the presence of an indemnity clause was not the reason the courts found that the exercise of personal jurisdiction was warranted.

Before Toray could file a Reply to Avery's Opposition, Judge Polster reassigned the case to Judge O'Malley and denied Toray's Motion as "premature." Dkt. No. 24. Judge Polster's Order placed the case in an awkward procedural position. Toray's original Motion was "denie[d] as premature, but without prejudice to refiling." Dkt. No. 24. As such, it could have been understood that Toray must file an Answer to Avery's Complaint within ten days of Judge Polster's June 5, 2008, Order. *See* Fed. R. Civ. P. 12(a)(4)(A). On the other hand, it could have been understood that by filing an Answer, Toray would waive its right to pursue its Motion to Dismiss under Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b). Thus, as a precaution, Toray filed a Renewed Motion to Dismiss or Transfer on June 13, 2008. Dkt. No. 29.

Toray addressed all of Avery's allegations in its Renewed Motion to Dismiss or Transfer, and once again stated the plain fact that Toray had no contacts with the forum state and therefore was not subject to personal jurisdiction in Ohio. Dkt. No. 29.

On July 16, 2008, Renner filed Avery's Opposition to Toray's Renewed Motion to Dismiss or Transfer. Dkt. No. 32. With still no evidence to support a credible theory of personal jurisdiction over Toray, Avery and Renner continued to assert the insupportable theory that Toray's business relationship with Alien must somehow create jurisdiction over Toray in Ohio, despite Toray's lack of contacts with the forum. Also, for the first time since filing the Complaint over a year earlier, Avery and Renner requested the opportunity to develop the facts they needed to support their specious opposition to Toray's Motion to Dismiss or Transfer.

---

[3]  Avery cited *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975); *Acrison, Inc. v. Control and Metering Ltd.*, 730 F.Supp 1445 (N.D. Ill. 1990); and *J.C. Penney Co. v. Malouf Co.*, 196 S.E.2d 145 (Ga. 1973).

On July 22, 2008, the Court granted Avery's request for limited jurisdictional discovery until September 30.  On August 1, 2008, Avery, through Renner, served Toray with a Notice of Rule 30(b)(6) Deposition and Requests for Production of Documents and Tangible Things.  Toray provided timely written responses to Avery's discovery, and provided documents responsive to Avery's Requests shortly thereafter.  None of those documents indicated that Toray had any contact at all with Ohio.

During the month of August, Toray advised Renner that Toray's 30(b)(6) witness was a Japanese citizen residing in Japan and, as such, his deposition must be held at either the U.S. Embassy in Tokyo or the U.S. Consulate in Osaka.  Renner, however, did not seek judicial authority to take the 30(b)(6) deposition until the middle of September, thus necessitating extending the time for discovery until October 29, 2008.

On October 29, Avery, through Renner, took the deposition testimony of Shigeo Fujii, Toray's 30(b)(6) witness, at the U.S. Consulate in Osaka, Japan.  Avery learned nothing at the deposition that was not already disclosed in the documents provided by Toray or in Toray's previous statements.

After the limited discovery period closed on October 29, Toray heard nothing from Avery or Renner about Avery's intentions to advance the dispute over jurisdiction.  In mid-November, Toray reached out to Avery in an attempt to ascertain whether Avery planned to take any additional steps in the matter, such as supplementing its brief or notifying the Court that discovery was complete.  Avery did nothing.

Tiring of Avery's inaction—and eager to receive a ruling on its Motion—Toray informed the Court by letter dated December 3, 2008, that discovery was complete and asked the Court to rule on the merits of its Motion to Dismiss or Transfer as soon as possible.  Dkt. No. 39.

6

Faced with the possibility of an imminent ruling on Toray's Motion, Avery and Renner again sought to further delay the Court's ruling on the merits of Toray's Motion to Dismiss or Transfer.  Although Avery had not uncovered any additional facts that would change or bolster the flawed arguments they had already made, Avery asked for and received a supplemental briefing schedule.  The Court instructed Avery to file a supplemental opposition by January 9, 2009, with Toray's reply to follow on January 23.

However, instead of preparing its supplemental opposition to Toray's Motion to Dismiss or Transfer, Avery and Renner finally conceded what had been apparent since the inception of the case—that personal jurisdiction does not lie in this Court over Toray—by filing a voluntary dismissal on New Year's Eve, and concurrently filing suit against Toray in the Northern District of California—not North Dakota, which was the target jurisdiction for Toray's Motion to Transfer and the only jurisdiction where Toray admitted that it was subject to personal jurisdiction.  Thus, Avery ended a case that had been pending in this Court for almost two years and successfully avoided a ruling on the merits of Toray's Motion to Dismiss or Transfer that had been pending for over 15 months.

## ARGUMENT

Under 28 U.S.C. §1927, "[a]ny attorney or other person admitted to conduct cases in any court … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   The Sixth Circuit has held that §1927 sanctions "are warranted when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expenses to the opposing party.'" *Red Carpet Studios v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (quoting *Ruben v. Warren City*

*Sch.,* 825 F.2d 977, 984 (6th Cir. 1987)).  Specifically, "an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings."  *Id.*[4]

No case in this circuit has been located specifically addressing the question of whether a law firm may be sanctioned for the actions of individual attorneys under § 1927, and courts in other circuits are split on the issue.[5]  However, as one court aptly notes, the statute by its terms is not limited to recovery from an individual attorney, but focuses on those "admitted to conduct cases" to distinguish between recovery from attorneys and recovery from a party.  *Brignoli v. Balch Hardy & Scheinman*, 735 F.Supp. 100, 101-102 (S.D.N.Y. 1990).  Because "a law firm as much as an individual attorney can conduct litigation," liability can ensue.  *Id.  See also Moore v. Keegan Mgmt Co.*, 154 F.R.D. 237, 243 (N.D. Cal. 1994) (noting a law firm as a "driving force" of litigation).  Therefore, Toray respectfully requests that this Court follow those courts allowing recovery against a law firm under § 1927.

Renner is subject to sanction because it (1) abused the judicial process by intentionally misrepresenting facts and applicable law to this Court in hopes of creating unnecessary delay and (2) disregarded the risk that its actions would needlessly multiply proceedings by delaying a decision of this Court on the merits of Toray's Motion.

As described above, Avery and Renner willfully disregarded substantial evidence that Toray did not have sufficient contacts with Ohio to warrant the exercise of personal jurisdiction. Indeed, Avery never disputed the fact that Toray had no contacts with Ohio.  Avery disregarded

---

[4]  Accord *Garner v. Cuyahoga County Juvenile Court,* -- F.3d --, 2009 WL 137227 (6th Cir. Jan. 22, 2009), attached as Exhibit 1.

[5]  Compare *Baker Indus. V. Cerberus Ltd.*, 764 F.2d 204, 206 (3d Cir. 1985) (allowing sanctions against law firm under § 1927); *Moore v. Keegan Mgmt. Co.*, 154 F.R.D. 237, 242-243 (N.D. Cal. 1994) (same), *rev'd on other grounds* by 78 F.3d 431 (9th Cir. 1996); and *Brignoli v. Balch Hardy & Scheinman*, 735 F.Supp. 100, 102 (S.D.N.Y. 1990) (same) with *Claiborne v. Wisdom*, 414 F.3d 715, 722-724 (7th Cir. 2005).

case law establishing that personal jurisdiction must be evaluated on an individual party basis and attempted to use personal jurisdiction over Alien to bootstrap jurisdiction over Toray.

Avery and Renner attempted to manufacture jurisdiction based on three increasingly tenuous arguments.  First, they alleged that Toray surreptitiously waited to raise the indemnity issue between Toray and Alien, but failed to note that the indemnity issue was not relevant to anything (if ever) until Avery sued Alien on March 27, 2008, almost <u>one year</u> after Avery sued Toray.

Second, they argued that Toray mischaracterized the true extent of Toray's involvement in the design of the accused machine, but failed to note that Avery's "evidence" supporting Toray's involvement (Dkt. No. 21, Exh. A, B) concerned a <u>different machine</u> than the machine at issue in this case.

Finally, they argued that the existence of an indemnification agreement between Toray and Alien provided sufficient justification to warrant the exercise of personal jurisdiction over Toray, despite Toray's having no contacts with Ohio, and despite Avery's utter failure to meet its burden of proof that such contacts existed.

Avery and Renner clung to mischaracterized "facts" and incorrect legal theories long after they knew or should have known that that their facts and theories were wrong and could not support the exercise of personal jurisdiction over Toray.  In fact, given that their stated basis for asserting personal jurisdiction over Toray relied solely on Toray's relationship with Alien, it is questionable that they had any basis at all for filing Avery's Complaint in the Northern District of Ohio.  Nevertheless, Avery and Renner continued to delay the Court's ruling on Toray's Motion, even though they knew or should have known that the continued delays would not alter the facts or the likely result.  They delayed this case for as long as they could, and then, on New

Year's Eve, dismissed the action in Ohio, only to immediately refile in the Northern District of California.  Their actions, taken as a whole, demonstrate that Renner has abused the judicial process—and wasted this Court's limited time and resources—to stall for time while it attempted to find some way to avoid a ruling on the merits of Toray's Motion.

The imposition of sanctions "require[s] a showing of something less than subjective bad faith, but something more than negligence or incompetence."  *Red Carpet,* 465 F.3d at 646. Renner's actions meet this standard.  Even if Renner had a genuine misapprehension of the applicable law or of the related facts at the outset of the case, it cannot credibly be denied that Renner overreached when it argued to this Court concerning Toray's relationship with Alien by citing evidence pertaining to the design of a product that has never been relevant to this case and when it accused Toray of concealing Alien's indemnification clause, knowing that Alien had only recently been sued.

Although it was Avery's right oppose Toray's Motion on bona fide grounds, neither Avery nor Renner was entitled to abuse judicial process in doing so.  Their purposeful delay and, when delay was no longer possible, their voluntary dismissal of Avery's Complaint significantly increased litigation costs for Toray, wasted Toray's and the Court's time, and forestalled resolution of the case in an appropriate forum.  Wasting more than a year of Toray's and the Court's resources with unreasonable delaying tactics is sanctionable under 28 U.S.C. § 1927.

## CONCLUSION

For more than a year, Toray repeatedly asserted that not only did Toray not have contacts with Ohio sufficient to warrant the exercise of personal jurisdiction over Toray, it had <u>no</u> contacts with Ohio.  Despite repeated opportunities, Avery, through Renner, never put forth any facts disputing Toray's lack of contacts.  Instead, it opposed Toray's Motion with increasingly

10

tenuous arguments that were both incorrect and irrelevant.  Avery and Renner persisted in

opposing Toray's Motion long after they knew or should have known that Toray had no contacts

with Ohio.  Then, when faced with an imminent ruling on the merits of Toray's Motion to

Dismiss or Transfer, they blithely dismissed Avery's Complaint against Toray and refiled the

Complaint in the Northern District of California.

Avery and Renner have wasted more than a year of Toray's and the Court's time with

unreasonable litigation tactics.  As such, Toray requests sanctions under 28 U.S.C. § 1927 to

recover excess costs, expenses, and attorney's fees and for leave to take discovery regarding

what basis, if any, Avery and Renner had for asserting personal jurisdiction over Toray at the

time Avery's Complaint was filed.  Toray will provide evidence of fees and expenses to the

Court upon the granting of this Motion.

Respectfully submitted,

DATED: February 4, 2009                    /s/ Adam R. Hess
                                           Adam R. Hess  (admitted pro hac vice)
                                           adam.hess@pillsburylaw.com
                                           Catherine S. Branch (admitted pro hac vice)
                                           catherine.branch@pillsburylaw.com
                                           PILLSBURY WINTHROP SHAW
                                             PITTMAN LLP
                                           2300 N Street N.W.
                                           Washington, D.C. 20037-1122
                                           Telephone:  (202) 663-8889
                                           Facsimile:  (202) 663-8007


                                           Steven M. Auvil  (0063827)
                                           sauvil@beneschlaw.com
                                           BENESCH, FRIEDLANDER,
                                             COPLAN & ARONOFF LLP
                                           200 Public Square, Suite 2300
                                           Cleveland, Ohio  44114-2378

Telephone:  (216)  363-4500
Facsimile:  (216)  363-4588

Attorneys for Defendant
TORAY INTERNATIONAL, INC.