## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

AVERY DENNISON CORPORATION,

     *Plaintiff,*

v.

TORAY INTERNATIONAL, INC.,

     *Defendant*.

**Civil Action No. 1:07-cv-01268**

**JUDGE KATHLEEN O'MALLEY**

---

## OPPOSITION TO TORAY'S MOTION UNDER 28 U.S.C. § 1927

**TABLE OF CONTENTS**

I.   INTRODUCTION...............................................................................................1

II.  LAW AND ARGUMENT ....................................................................................3

    A.   Avery's Counsel Did Not Misrepresent Facts Or Law To The Court............4

        1.   The facts and law do not support the assumptions underlying Toray's claim that Avery "failed to note that the indemnity issue was not relevant to anything (if ever) until Avery sued Alien."...........................4

        2.   The facts do not support Toray's claim that Avery "failed to note that Avery's 'evidence' supporting Toray's involvement (Dkt. No 21, Exh. A, B) concerned a different machine than the machine at issue in this case."...............................................................................................6

        3.   The law, facts, and Judge Polster's order undermine Toray's claims that Avery "argued that the existence of an indemnification agreement between Toray and Alien provided sufficient justification to warrant the exercise of personal jurisdiction over Toray, despite Toray's having no contacts with Ohio, and despite Avery's utter failure to meet its burden of proof that such contacts existed."......................................................7

    B.   Avery's Counsel Did Not Delay A Decision By This Court On Either Toray's Original Or Renewed Motions To Dismiss................................................9

III. CONCLUSION .............................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Asahi Metal Ind. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102 (1987)...................................5

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).........................................................1, 5

*Preferred Capital, Inc. v. Associates In Urology*, 453 F.3d 718 (6th Cir. 2006)............................5

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642 (6th Cir. 2006) ............4

*Rentz v. Dynasty Apparel Industries, Inc.*, -- F.3d --, 2009 WL 321636 (6th Cir. Feb. 11, 2009)3

*Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997), cert. denied, 522 U.S. 1046
   (1998) .................................................................................................... 3, 9, 12

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).........................................1, 5

**Statutes**

28 U.S.C. § 1927 .................................................................................... 1, 3, 9, 12

**Rules**

Rule 11 of the Federal Rules of Civil Procedure ............................................................3

Rule 12 of the Federal Rules of Civil Procedure ............................................................5

## I.    INTRODUCTION

Toray's motion is a frivolous, unwarranted attack on the professional reputation of Avery's counsel.  Indeed, much of Toray's argument simply re-re-hashes the contents of its Motion to Dismiss [ECF 9] and Renewed Motion to Dismiss [ECF 29].  Reading like a sur-reply on jurisdiction and urging the Court to gratuitously decide a moot issue in a closed case, Toray's motion should be denied.

Even a cursory review of the record shows that Toray falls far short of establishing the objectively unreasonable or vexatious conduct required under § 1927.  Avery and its counsel had more than a reasonable belief that Toray was subject to this Court's personal jurisdiction, and the matter was addressed and explored in reasonably timely fashion.  In fact, Judge Polster agreed with Avery that there was a reasonable basis for asserting personal jurisdiction based solely on the terms of the Purchase Order when he denied Toray's motion and permitted Avery to conduct jurisdictional discovery of Toray.  Judge Polster wrote:

> it is also possible that Toray's indemnification, defense, and license-procurement obligations to, and corporate relationship with, Alien are contacts with Ohio sufficient to create personal or specific jurisdiction in this forum

[Order pp. 3-4, ECF 24].

Further, while Avery ultimately opted to dismiss this action in favor of pursuing the matter in the Northern District of California—where Toray maintains an office and can no longer evade the merits of Avery's claims through jurisdiction objections—the evidence gathered to date continues to support the assertion of personal jurisdiction over Toray in this district under *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) or *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

1

The record undeniably shows that Avery pursued the case without delay and within the confines of the federal rules and this Court's various scheduling orders.  Further, when jurisdictional discovery was permitted—as **agreed to** by Toray—it was Toray that caused delay, insisting upon and erecting procedural, logistical, and scheduling barriers that prolonged the process.



Avery was forced to jump through numerous procedural hoops in order to conduct Toray's deposition at the U.S. Consulate in Osaka, Japan.  Once underway, Toray's witness professed to have little or no knowledge of the key issues cited in Judge Polster's order—the relationship between Toray and Alien and Toray's contacts with the Northern District of Ohio.

Toray's real complaint is that, when both parties presented facts and argument to the court regarding jurisdiction, the court was not immediately swayed by Toray's position.  The most likely reason for that outcome is that, at the very least, there were significant disputed and debatable legal and factual issues.  While Toray is apparently perturbed that its efforts to evade jurisdiction were not immediately successful, the result clearly was not due to any improper conduct or misrepresentations to the Court by Avery's counsel.

Although Toray's baseless and illegitimate motion would itself warrant sanctions against it and the filing attorney under Rule 11 and § 1927, the case in this district is over and the interests of justice are best served by the parties litigating Toray's infringement in the N.D of California rather than lobbing sanction allegations back-and-forth.

## II.    LAW AND ARGUMENT

Section 1927 authorizes a court to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.  In the Sixth Circuit an attorney[1] is sanctionable under § 1927 "without a finding of bad faith, 'at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'"  *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997), cert. denied, 522 U.S. 1046 (1998) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir.1986)).

The accused conduct must, however, be objectively improper:

> [t]here must be some conduct on the part of the subject
> attorney that trial judges, applying the collective wisdom of
> their experience on the bench, could agree falls short of the
> obligations owed by a member of the bar to the court and
> which, as a result, causes additional expense to the
> opposing party.

*Id*. (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir.1987)).  Under this objective standard, "§ 1927 sanctions require a showing of something less than subjective bad faith, but

---

[1] Since the filing of Toray's motion the Sixth Circuit has held that only individual attorneys, and not a law firm, are within the reach of § 1927.  *Rentz v. Dynasty Apparel Industries, Inc.*, -- F.3d --, 2009 WL 321636 *6 fn 6 (6th Cir. Feb. 11, 2009).

3

something more than negligence or incompetence." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

Toray offers two related basis for its motion, claiming Avery's counsel:

> 1. abused the judicial process by intentionally misrepresenting facts and applicable law to this Court in hopes of creating unnecessary delay and

> 2. disregarded the risk that its actions would needlessly multiply proceedings by delaying a decision of this Court on the merits of Toray's Motion [to dismiss].

Toray Motion, p. 8. Neither has any merit.

### A. Avery's Counsel Did Not Misrepresent Facts Or Law To The Court.

Although Toray plainly disagrees with Avery's briefing of the jurisdictional inferences and conclusions that can be drawn from various facts, Toray fails to show that Avery's counsel misrepresented the facts themselves or that the characterization of those facts was frivolous or anything other than normal litigation advocacy. Toray does not come even close to showing that Avery's counsel fell short of its obligations to this Court.

Toray identifies three alleged mischaracterizations by Avery's counsel. Toray Mem. p. 9. The underlying facts are clear and explicit, and the challenged characterizations are easily supported by those facts.

> **1. The facts and law do not support the assumptions underlying Toray's claim that Avery "failed to note that the indemnity issue was not relevant to anything (if ever) until Avery sued Alien."**

Avery disagrees that the indemnity agreement was not relevant to personal jurisdiction until after Alien was sued. The facts are undisputed:

4

- Toray entered into a Purchase Order with Alien for the accused HiSAM machines;
- the Purchase Order contains express representations and warranties against patent infringement; and
- the Purchase Order explicitly provided that Toray would "defend and indemnify" any claims based on allegations that Alien infringed another's patents.

Personal jurisdiction is a personal right and waivable by a party. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14 (1985); Fed.R.Civ.P. 12 (objection to personal jurisdiction waived if not timely asserted).  The Supreme Court recognizes that parties, particularly in the commercial context, can agree in advance to the personal jurisdiction of a forum.  *Burger King*, 471 U.S. at 473 n. 14.  *See also Preferred Capital, Inc. v. Associates In Urology*, 453 F.3d 718 (6th Cir. 2006) ("A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable.").  The "defend and indemnify" provision of the Purchase Agreement—which obligates Toray to participate in infringement actions related to the machine sold to Alien—might be such an agreement, subjecting Toray to personal jurisdiction in any forum in which Alien could be sued.

Alternatively, under *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) and its progeny, personal jurisdiction does not exist <u>merely</u> by placing a product into the "stream of commerce" where fortuitous circumstances or the "unpredictable currents or eddies" of commerce move products into a forum.  *See Asahi Metal Ind. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 and 117 (Brennan, J., dissenting) (1987).  However, a corporation may be subject to jurisdiction in a forum—even one in which it does not does not have an office, bank accounts, employees, etc.—if there is some "additional conduct"

5

by the defendant such that it is foreseeable "that he should reasonably anticipate being haled into Court there." *World-Wide Volkswagen*, 444 U.S. at 297.

Here, Toray engaged in such "additional conduct"—specifically entering into the Purchase Agreement with Alien—in which it ***expressly agreed to "indemnify and defend" by participating in patent infringement suits against Alien***.  At a minimum, it was certainly foreseeable to Toray that it therefore might be "haled into Court" in any forum in which Alien was subject to such a suit.  In fact, at that time Alien had RFID facilities in 3 states: California, Ohio and North Dakota.  Thus, out of the approximately 94 federal district courts, the indemnity/defense provisions of the Purchase Order make it at least "reasonably foreseeable" that Toray might be brought into one of the 7 districts covering those 3 states—including, of course, the Northern District of Ohio.

The Purchase Agreement therefore shows (i) that Toray agreed in advance to be subject to jurisdiction in Ohio; and, alternatively (ii) the foreseeability of having to litigate in this district.  While Toray disagrees with the evidentiary strength, weight, or implications of the indemnity/defense provision of the Purchase Order, Avery's characterization of it as relevant was certainly not "objectively" frivolous or vexatious.

> **2.  The facts do not support Toray's claim that Avery "failed to note that Avery's 'evidence' supporting Toray's involvement (Dkt. No 21, Exh. A, B) concerned a different machine than the machine at issue in this case."**

There are several fatal flaws in Toray's theory that Avery withheld information about Exhibits A and B to Avery's Opposition [ECF 21] to the original Motion to Dismiss.  First, the Exhibits themselves ***do appear*** to relate to the HiSAM machine: they disclose a roll-to-roll "Strap Attach" concept for Alien to attach RFID chips to antennas;

6

Toray admits that it sold the HiSAM machines to Alien; and it seems more than reasonable to conclude that the Exhibits, which are Toray documents, relate to the machines it ultimately sold and which are the subject matter of the instant actions.

Second, while Toray claims that these Exhibits relate to a different machine (*i.e.*, not the HiSAM), Toray did not make that argument until it filed the Renewed Motion to Dismiss.  [ECF 29, p. 5.]  Thus, Toray's explanation came ***after*** Avery filed ECF 21, so clearly Avery could not have "disclosed" it to the Court in ECF 21.

Finally, Toray's claim that Exhibits A and B are irrelevant ***is not fact***, but rather an ***unsubstantiated argument***[2] by its counsel.  Avery's statements to the Court regarding these Exhibits are entirely consistent with the documents themselves and all available information.  Toray certainly cannot point to any objective obligation or basis that would require Avery to (i) anticipate Toray's lawyers supposition about a document or (ii) present that supposition to the court.

> **3.** **The law, facts, and Judge Polster's order undermine Toray's claims that Avery "argued that the existence of an indemnification agreement between Toray and Alien provided sufficient justification to warrant the exercise of personal jurisdiction over Toray, despite Toray's having no contacts with Ohio, and despite Avery's utter failure to meet its burden of proof that such contacts existed."**

The facts and the parties' arguments were before Judge Polster when he denied as premature Toray's original motion to dismiss.  The Court had the benefit of the parties'

---

[2] Although Toray claims that Exhibits A and B relate to a different machine, it presented no evidence to support that claim.  Exhibit H to Toray's Renewed Motion purports to be a complete copy of Avery's Exhibits A and B.  [ECF 29, p. 5 and Ex. H].  Exhibit H, however, was not authenticated in any way and Toray's supporting declaration did not say anything about these exhibits or an allegedly different machine.  In fact, when Toray's 30(b)(6) representative was asked, he wasn't sure whether these Exhibits referred to HiSAM or not.  Fujii Depo., 54:3-13.  Toray marked as "Highly Confidential" the entire deposition transcript of Mr. Fujii, so relevant portions will be submitted under seal pursuant to the Protective Order.  [ECF 11, ¶ 20.]

7

briefs and also heard argument on it during the May 29, 2008 settlement conference.

Judge Polster concluded that the ***express terms of the Purchase Order*** were

sufficient to carry Avery's jurisdictional burden at that stage of the case:

> The Court has also been informed by the parties that the purchase order controlling the transaction in which Toray sold the allegedly infringing machine to Alien contains language warranting and representing that the machine does not infringe on any patent. The same section of the purchase order also contains language obligating Toray to "defend and indemnify [Alien] for any loss, cost, liability or expenses arising out of or resulting from any breach or claimed breach" of the non-infringing warranties and representations. (ECF No. 21, Pltf.'s Opp. Br. 7.) Moreover, the purchase order contains additional language that may, in some circumstances, obligate Toray, at Toray's expense, to procure a license for Alien to continue using the allegedly infringing machine. (*Id.*) Avery Dennison's opposition brief also contains allegations that Toray and Alien have a relationship that goes beyond just arm's length seller and buyer. (See generally, ECF No. 21, Pltf.'s Opp. Br.) Accordingly, Avery Dennison argues, jurisdiction over Toray in the Northern District of Ohio exists based on Toray's indemnification, defense, and license-procurement obligations to Alien, and based on the close corporate relationship between Toray and Alien.
>
> It is possible that Toray has no contacts, substantial or otherwise, with Ohio, such that personal jurisdiction over Toray does not exist in the Northern District of Ohio. ***On the other hand, it is also possible that Toray's indemnification, defense, and license-procurement obligations to, and corporate relationship with, Alien are contacts with Ohio sufficient to create personal or specific jurisdiction in this forum.*** Resolving the jurisdiction question in the Toray Case will require extensive and expensive discovery on the details of the indemnification, defense, and license-procurement provisions of the purchase contract, and on the nature of Toray's relationship to Alien.

Order pp. 3-4 [ECF 24, emphasis added].

The Court's Order makes clear that the legal and factual arguments advanced by both parties were understood and considered by the Court.  Judge Polster determined that the question of personal jurisdiction was, based on the record at that point, a close call that could go either way: thus his reference to the need for "extensive and expensive discovery."

Of course, § 1927 does not punish attorneys for such close calls, and the items complained of by Toray do not violate any obligation owed by Avery's counsel to the Court.  *Ridder*, 109 F.3d at 298 ("[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court").  Indeed, Judge Polster's Order recognized the complete reasonableness of Avery's jurisdictional arguments.

### B.   Avery's Counsel Did Not Delay A Decision By This Court On Either Toray's Original Or Renewed Motions To Dismiss.

Toray complains bitterly about how long the matter was pending, but a simple review of the timeline shows that the case did not proceed abnormally slow.  Certainly any perceived delays in the case were not due to Avery.  In fact, about 70% of the entire time the case was pending (13 of 19 months) were spent:

> (i)  waiting for Toray to file something (5 months, May-September 2007); and
>
> (ii) engaged in Court-sponsored settlement efforts (8 months, October 2007-May 2008).

The following timeline, derived from the Court's docket for the matter, clearly illustrates the relative time taken by the different phases and processes in the case.

9

On April 30, 2007 Avery filed the Complaint and sent a waiver of service letter. Toray not only took the full time to respond, but also obtained an additional 30 day extension.  [ECF 8.]  That process consumed 5 months.



The next 8 months involved 11 conferences scheduled by Judge Polster in an attempt to settle the case.  While the parties participated in good faith, settlement was not possible in part due to Toray's insistence on an "all in" settlement that covered Alien. During that time the Court instructed Avery to not respond to the Motion to Dismiss. Eventually the Court instructed Avery to respond and the Court denied Toray's Motion to Dismiss a mere 9 days later on June 5, 2008.  [ECF 21 and 24.]

During the next 2 months the case transferred from Judge Polster and Toray filed its Renewed Motion.  The briefing was done promptly with Toray filing a Reply on July 18, 2008.  [ECF 33.]  During a status conference on July 21, 2008, the parties jointly agreed to a period for jurisdictional discovery, including a deposition of Toray.

Toray's designated witness was a Japanese resident, and Avery attempted to informally schedule the deposition for a mutually convenient time and location. However, Toray insisted on the deposition in Japan and in accordance with full

international conventions requiring complex arrangements for a consular deposition.  [*See e.,g.,* ECF 37.]  Scheduling was difficult as consulate rooms were heavily booked, and it took time to find an available date for the consulate, witness, and Toray and Avery's counsel. The deposition occurred at the U.S. Consulate in Osaka, Japan on October 28, 2008.  Despite the scheduling difficulties, discovery was completed within 90 days, including a ***joint motion*** for a short extension of time by Avery and Toray.  [ECF 38.]

Unfortunately, despite understanding completely the purpose of the deposition, the Toray representative professed to have little or no knowledge of many of the issues that Judge Polster recognized would be important in determining jurisdiction. Toray's Rule 30(b)(6) representative:

- Did not know if there was any negotiation between Alien and Toray over the HiSAM purchase order. (Fujii Depo., 65:21-25.)

- Did not know if the second purchase order on the HiSAM machine was ever executed by Toray.  (Fujii Depo., 73:13-19.)

- Did not know about the Toray-Alien FSA development agreement (Fujii Depo., 83:11-20.)

- Did not know if Toray International had sold any products into Ohio within the last two years.  (Fujii Depo., 85:6-9.)

- Testified completely contradictory to Alien's witness on whether the indemnity provision in the purchase order was merely "boilerplate" as Toray's lawyers have characterized it, or a critical provision without which Alien would not have purchased the HiSAM from Toray, as Alien has characterized it.  (Fujii Depo., 66:20-24; 67:5-17; 74:13-20.)

- Stated that he was not the most knowledgeable person about the negotiation between Alien and Toray and that that person had left Toray.  (Fujii Depo., 14:14-21; 27:3-7; 66:1-6.)

Avery's counsel received the final transcript towards the middle of November 2008.  Toray's instant motion complains that Avery's counsel then "did nothing" in

11

November and waited until the end of December before dismissing the action.  Toray neglects to mention that its own counsel was traveling in this period, contributing to the apparent lack of progress.  *See* Email from Adam Hess, attached.  Of course, Avery's counsel was very busy in November and December engaged in expedited discovery in the Alien case and with the Alien preliminary injunction hearing on December 15-18.  Less than 2 weeks later—a period that included the Christmas holiday, Avery dismissed the action and refiled it in the Northern District of California.

The time between the end of jurisdictional discovery and dismissal was approximately 2 months—in the context of this case that clearly was not an unreasonably long time.  Indeed, Avery waited 5 months at the beginning of the case for Toray to appear, including a requested extension from Toray.  Toray also required Avery to jump through jurisdictional hoops to obtain the discovery of Toray that Judge Polster recognized was necessary to resolve the jurisdictional issue.  If Toray was in such a rush to have the case resolved or dismissed, it would have acted expeditiously itself.

Moreover, § 1927 requires that any challenged conduct results in, or "causes additional expense to the opposing party." *Ridder*, 109 F.3d at 298.  Toray did not have to do anything related to this case in November or December 2008, and thus this short time, even if somehow considered an unreasonable delay, could not have caused any additional expense to Toray.  Of course, Toray's counsels (lead and local) came to the Alien preliminary injunction hearing and spent several days watching from the gallery, but this was certainly not required.[3]

---

[3] Indeed, Toray's main counsel from Washington, D.C. returned to Cleveland and, with Toray's local counsel, also watched the closing arguments to the Alien preliminary injunction hearing on February 4,

12

### III.    CONCLUSION

Toray's complaint that Avery somehow delayed a ruling on jurisdiction glosses over a key point: Judge Polster did rule on it, finding that Avery presented at least a *prima facie* case for personal jurisdiction.  Moreover, Judge Polster's finding was based on the undisputed evidence—the purchase agreement itself and the indemnity/defense agreement, license provision, and Toray's other obligations.  An objective read of that evidence shows that it is reasonable to srgue that Toray is subject to jurisdiction in Ohio.

Additional discovery did not undermine this finding, contrary to Toray's assertions.  Its proffered corporate witness was generally unprepared, uninformed, and simply not knowledgeable about the Purchase Agreement and Toray's relationship with Alien.  Indeed, he testified that the person most knowledgeable had "left" Toray.  However, he did try to parrot his attorney's claim that the indemnity agreement was mere "boilerplate" and that Toray didn't pay any attention to it.  While this does not lessen its enforceability, it is at odds with the testimony of Alien's witnesses who testified that the indemnity agreement was specifically negotiated between the parties.  Thus, despite some regrettable unproductive discovery there remained unanswered and/or disputed jurisdictional facts.

Contrary to Toray's underlying assumption, Avery had and continues to have more than a reasonable basis to allege personal jurisdiction over Toray in Ohio.  Avery ultimately decided to pursue the case elsewhere when it became clear that additional jurisdictional discovery would be needed and the issue was not likely to be resolved anytime soon.  Even if Avery prevailed—as it thought it might—Toray was not likely to

---

2009, more than a month after the Toray action had been dismissed.  So obviously the pursuit of this case in this District would not have prejudiced or been difficult to Toray.

accept the ruling and it would probably keep re-asserting it throughout the case.  Avery, rather than continuing to be sidetracked by Toray's attempts to evade jurisdiction, concluded it would be better to pursue the matter in a venue in which Toray was clearly subject to jurisdiction.

Toray falls woefully short of establishing any improper conduct by Avery or its counsel, and its motion should be denied.


23 February 2009                                   Respectfully submitted,

                                                   s/ Kyle B. Fleming
                                                   Jay R. Campbell
                                                   Todd R. Tucker
                                                   Kyle B. Fleming
                                                   Joshua M. Ryland
                                                   Mark C. Johnson
                                                   RENNER, OTTO, BOISSELLE, & SKLAR, LLP
                                                   1621 Euclid Avenue, 19th Floor
                                                   Cleveland, OH 44115
                                                   Telephone: (216) 621-1113
                                                   Facsimile:  (216) 621-6165


                                                   *Attorneys for Avery Dennison Corporation*

14

## CERTIFICATE OF SERVICE

I hereby certify that on 23 February 2009, the foregoing brief was filed electronically with the Court.  Parties may access this filing through the Court's ECF system.


s/Kyle B. Fleming

*An Attorney for Avery Dennison Corporation*

15