UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **AVERY DENNISON CORPORATION,** | : | Case No. 07 CV 1268 |
| **Plaintiff,** | : | |
| | : | JUDGE KATHLEEN M. O'MALLEY |
| v. | : | |
| **TORAY INTERNATIONAL, INC.** | : | **MEMORANDUM & ORDER** |
| **Defendant.** | : | |

Before the Court is Defendant Toray International, Inc.'s ("Toray") *Motion for Sanctions Against Renner, Otto, Boisselle & Sklar Under 28 U.S.C. § 1927* ("Motion for Sanctions") (Doc. 42, Mt. for Sanctions). In its motion, Toray requests that the Court sanction counsel for Plaintiff Avery Dennison Corporation ("Avery") pursuant to 28 U.S.C. § 1927. This motion has been fully briefed and is ripe for adjudication.[1] For the reasons set forth below, Toray's motion is **DENIED**.

**I. BACKGROUND**

**A. INTRODUCTION**

Toray's Motion for Sanctions arises after Avery voluntarily dismissed this case pursuant to Rule 41 of the Federal Rules of Civil Procedure on December 31, 2008. (Doc. 40, Notice of Dismissal; *see also* Doc. 41, Order on Notice of Dismissal.) Toray argues that the attorneys involved in this case from the law firm Renner, Otto, Boisselle & Sklar ("Renner")[2] should be sanctioned for

---

[1] Toray filed its Motion for Sanctions on February 4, 2009. (Doc. 42.) Avery filed its response in opposition to the Motion for Sanctions on February 23, 2009, (Doc. 43, Opp'n Brief), and Toray filed its reply on March 9, 2009 (Doc. 45, Reply Brief).

[2] Toray initially characterized its Motion for Sanctions as against both the law firm, Renner, and the individual attorneys involved in this litigation. (Doc. 42-2 at 1, 8, Brief in Support or Mt. for Sanctions.) In its Reply, however, Toray noted that the Sixth Circuit recently

their conduct during the course of the proceedings. Specifically, Toray argues that Renner knowingly filed Avery's complaint in this district without a plausible basis for asserting personal jurisdiction over Toray, and then intentionally misrepresented facts and law to the Court for purposes of causing unnecessary delay and needlessly multiplying proceedings. (Doc. 42-2 at 8.)

### B. RELEVANT PROCEDURAL HISTORY

Unnecessary delay and needless multiplication of proceedings are the key allegations in Toray's Motion for Sanctions. (Doc. 42-2 at 8.) Accordingly, a relatively detailed procedural history of the case is necessary to analyze the motion before the Court.

#### 1. Procedural History under Judge Polster's Supervision

Renner filed this case on behalf of Avery on April 30, 2007. (Doc. 1, Complaint.) The case was originally assigned to Judge Dan Aaron Polster. After waiving service (Doc. 4), Toray filed a motion for an extension of time until September 27, 2007 to answer or otherwise respond on August 28, 2007 (Doc. 8), which Judge Polster granted the next day.

On September 27, 2007, Toray filed a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue to the District of North Dakota. (Doc. 9, Motion to Dismiss or Transfer.) In its Motion to Dismiss or Transfer, Toray argued that it is not subject to personal jurisdiction in Ohio because it is a Japanese company without substantial contacts in the state.

Judge Polster proceeded to schedule a series of ten settlement and status conferences over the next seven months. (*See* Non-Document Orders dated 10/9/07, 10/31/07, 11/30/07, 12/21/07,

---

held that 28 U.S.C. § 1927 does not provide a basis for sanctions against law firms, only individual attorneys. (Doc. 45 at 1, n.1 (citing *Rentz v. Dynasty Apparell Indus., Inc.*, 556 F.3d 389, 396 n.6 (6th Cir. 2009) (noting the contrast on this issue between § 1927 and Fed. R. Civ. P. 11).) Accordingly, the Court follows *Rentz* and treats this motion as against all of the individual attorneys from Renner involved in this litigation, not Renner itself. In this Order, however, the Court will refer to the individual attorneys, collectively, as "Renner" for the sake of convenience.

1/18/07, 2/14/08, 3/7/08, 3/28/08, 4/11/08, and Doc. 19, dated 4/30/08.) Judge Polster ordered Avery not to file a response to Toray's Motion to Dismiss or Transfer during the course of these settlement conferences, until, on April 30, 2008, he ordered Toray to file a response by May 27, 2008. (Doc. 19.) On that date, Avery filed its response (Doc. 21), and Judge Polster held another status conference. In its response, Avery opposed the motion.[3] Avery, through Renner, also requested that Judge Polster stay the case and transfer it to the undersigned as related to *Avery Dennison Corp. v. Alien Technology, Inc.*, 08-CV-795, ("*Avery v. Alien*"), which was filed on that same day, May 27, 2008, and assigned directly to this Court. Two days later, on May 29, 2008, Judge Polster conducted another settlement conference and ordered Toray to file a reply relating to the Motion to Dismiss or Transfer by June 5, 2008, and Avery to file a sur-reply by June 12, 2008. (Doc. 22, Scheduling Order.)

On June 5, 2008, before Toray filed its reply, however, Judge Polster denied Toray's Motion to Dismiss or Transfer without prejudice to refiling, but granted Avery's request to transfer the case to this Court as related to *Avery v. Alien*. (Doc. 24, Order Denying Mt. to Dismiss or Transfer.) In his Order denying the Motion to Dismiss or Transfer, Judge Polster reasoned that the motion was "premature" because discovery would be necessary to resolve the question of jurisdiction in both this case and *Avery v. Alien*. He found that it would be most efficient to pursue discovery in the two

---

[3] In sum, Renner's arguments in support of personal jurisdiction, *i.e.*, in opposition to the Motion to Dismiss or Transfer, were as follows: Because parties to a commercial transaction can agree to personal jurisdiction in a particular forum, the indemnification clause in the purchase agreement between Toray and Alien acts as consent by Toray to personal jurisdiction in any forum in which Alien is subject to personal jurisdiction, even if Alien is not a party to a given proceeding. In the alternative, Avery claimed the indemnification clause in the agreement supports personal jurisdiction over Toray under the "stream of commerce" doctrine of *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980), because the clause makes a lawsuit in a forum in which Alien is subject to personal jurisdiction foreseeable. (Doc. 43 at 5-6.)

cases simultaneously.

In particular, Judge Polster found that the purchase order for the sale of the allegedly infringing machine from Toray to Alien included an indemnification provision that, along with other facts related to the relationship between Toray and Alien, might support personal jurisdiction over Toray in the Northern District of Ohio. In pertinent part, Judge Polster's Order states as follows:

> During the course of litigation in the Toray Case, the parties revealed to the Court that a related case has now been filed in the Northern District of Ohio and assigned to District Judge O'Malley. (*See* Case No. 1:08-CV-795 (the "Alien Case"), filed on March 27, 2008.) In the Alien Case, Avery Dennison filed suit against Alien, alleging infringing activity arising, in part, out of the machine that Toray imported and sold to Alien. (*See generally*, Alien Case, Compl.) Among the allegedly infringed patents in the Alien Case is the same '596 patent at issue in the Toray Case.
>
> The Court has also been informed by the parties that the purchase order controlling the transaction in which Toray sold the allegedly infringing machine to Alien contains language warranting and representing that the machine does not infringe on any patent. The same section of the purchase order also contains language obligating Toray to "defend and indemnify [Alien] for any loss, cost, liability or expenses arising out of or resulting from any breach or claimed breach" of the non-infringing warranties and representations. (ECF No. 21, Pltf.'s Opp. Br. 7.) Moreover, the purchase order contains additional language that may, in some circumstances, obligate Toray, at Toray's expense, to procure a license for Alien to continue using the allegedly infringing machine. (*Id.*) Avery Dennison's opposition brief also contains allegations that Toray and Alien have a relationship that goes beyond just arm's length seller and buyer. (*See generally*, ECF No. 21, Pltf.'s Opp. Br.) Accordingly, Avery Dennison argues, jurisdiction over Toray in the Northern District of Ohio exists based on Toray's indemnification, defense, and license-procurement obligations to Alien, and based on the close corporate relationship between Toray and Alien.
>
> It is possible that Toray has no contacts, substantial or otherwise, with Ohio, such that personal jurisdiction over Toray does not exist in the Northern District of Ohio. On the other hand, it is also possible that Toray's indemnification, defense, and license-procurement obligations to, and corporate relationship with, Alien are contacts with Ohio sufficient to create personal or specific jurisdiction in this forum. Resolving the jurisdiction question in the Toray Case will require extensive and expensive discovery on the details of the indemnification, defense, and license-procurement provisions of the purchase contract, and on the nature of Toray's relationship to Alien.

> Obviously this is also discovery that will, in all likelihood, be necessary in the Alien Case as well. The interests of efficiency for all those involved dictate that a single judge preside over these two related cases, at least until the jurisdiction question can be resolved in the wake of discovery.

(Doc. 24 at 2-4.) In a footnote, Judge Polster emphasized the relationship between the two cases, stating that, in his view, they are "inexorably intertwined such that the Alien Case subsumes the Toray Case; the Alien Case should have been filed as a 'related case' to Toray Case from the outset." (*Id*. at 4, n.1.)

As a result of Judge Polster's June 5 Order, the case was transferred to this Court.[4]

### 2. Procedural History under this Court's Supervision

After the June 5, 2008 transfer, this Court set a joint status conference to discuss both cases. The status conference was later re-scheduled for July 21, 2008. (Doc. 30.) Prior to the status conference, Toray filed a *Renewed Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, Motion to Transfer Venue and Motion for Reconsideration of Judge Polster's June 5, 2008 Order*. (Doc. 29, Renewed Motion to Dismiss or Transfer.) Avery filed a response on July 16, 2008 (Doc. 32, Renewed Opp'n Brief), and Toray filed a reply two days later (Doc. 33, Renewed Reply Brief), such that the Renewed Motion to Dismiss or Transfer was ripe at the time of the status conference on July 21, 2008.

At the status conference, each party summarized its position with respect to the pending Renewed Motion to Dismiss or Transfer. Toray contended that Avery could not articulate any sound

---

[4] Under this Court's local rules, since *Avery v. Alien* was a later-filed action, the relatedness of the cases normally would have resulted in a transfer of *Avery v. Alien* to Judge Polster, rather than a transfer of *Avery v. Toray* to this Court. Because Judge Polster was obligated to recuse himself in the later-filed case, however, the cases could only be combined here.

basis for this Court to exercise personal jurisdiction. Avery advanced the same arguments presented to Judge Polster, *i.e.*, that personal jurisdiction could be based on the relationship between Toray and Alien and that jurisdictional discovery would be necessary to determine the nature and extent of that relationship. After the Court expressed some skepticism regarding Avery's jurisdictional arguments *vis-a-vis* Toray, Avery asked for limited jurisdictional discovery in an effort to flesh out the nature of the relationship between Alien and Toray. Toray agreed to expedited jurisdictional discovery for the limited purpose of addressing, and expediting resolution of, its Renewed Motion to Dismiss or Transfer. The Court ordered that any such discovery be completed by September 30, 2008 and authorized the parties to supplement their briefs on the Renewed Motion to Dismiss or Transfer after discovery. (Doc. 34.)

In response to a request from Avery at the end of September, the Court issued an Order noticing the Fed. R. Civ. P. 30(b)(6) deposition of Toray's corporate representative, to occur in Japan on September 29, 2008, *i.e.*, the day before the Court-ordered deadline for jurisdictional discovery. (Doc. 37, Foreign Deposition Order.) The following day, the parties filed a *joint* motion to extend the deadline for jurisdictional discovery by one month (Doc. 38), which the Court granted on October 2, 2008.

The parties were silent until December 3, 2008, when Toray filed a letter updating the Court regarding jurisdictional discovery, and requesting a ruling on the Renewed Motion to Dismiss or Transfer. (Doc. 39, Ltr. Request for Ruling.) In its letter, Toray explained that the parties had completed jurisdictional discovery on October 29, and that it had not communicated with Avery since that time. Toray stated that it assumed by Avery's silence that both parties would rest on the previous briefing and, consequently, asked the Court to rule on the Renewed Motion to Dismiss or

Transfer. (*Id.*)

In response to Toray's December 3 Letter Request for Ruling, the Court contacted the parties, jointly, on December 9, 2008 to inquire as to the status of the record on the Renewed Motion to Dismiss or Transfer, *i.e.*, to inquire whether the matter was, in fact, fully ripe for the Court's consideration. (Doc. 43-2, Email Correspondence between the Court and Parties.) The parties informed the Court that they would discuss the Court's inquiry and respond shortly. On December 16, 2008, the parties jointly contacted the Court to explain that: (1) Avery requested an opportunity to file a supplemental brief based on a proposed schedule; (2) *Toray did not oppose this request*; and (3) the parties were discussing settlement but Toray did not want settlement discussions to delay a ruling on the Renewed Motion to Dismiss or Transfer. (*Id.*) On December 23, 2008, the Court issued a non-document Order establishing the agreed supplemental briefing schedule.

Finally, on December 31, 2008, Avery filed a Notice of Dismissal Without Prejudice pursuant to Rule 41(a)(1), (Doc. 40), which the Court granted (Doc. 41). Thus, the case was dismissed before either party filed a supplemental brief in connection with the Renewed Motion to Dismiss or Transfer. On the same day, Renner re-filed the case in the Northern District of California.

As this long chronicle of litigation reveals, the parties litigated jurisdiction for approximately twenty months, before two judicial officers, at which point Avery, through Renner, voluntarily dismissed the case and re-filed it in another district before the Court had a chance to rule on the merits of the jurisdictional dispute.

## II. Discussion

### A. 28 U.S.C. § 1927 Standard

Section 1927 provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The parties agree with respect to the standard applicable to a motion for sanctions pursuant to 28 U.S.C. § 1927. As noted above, unlike Rule 11 sanctions, § 1927 only applies to individual attorneys, not law firms. *Rentz*, 556 F.3d at 396 n.6. Further, the Sixth Circuit has held that sanctions "are warranted [under § 1927] when an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expenses to the opposing party." *Red Carpet Studios v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (omitting internal quotations and citations). Sanctions are appropriate when an attorney "intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings," *Red Carpet Studios*, 465 F.3d at 646, such as by intentionally pursing meritless claims. *See Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 645 (6th Cir. 2009). "Under this objective standard, '§ 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence.'" *Rentz*, 556 F.3d at 396 (quoting *Red Carpet Studios*, 465 F.3d at 646).[5]

---

[5] The Sixth Circuit recently noted that there is some uncertainty in this Circuit regarding the state of mind required for sanctions to be imposed under § 1927. *Garner*, 554 F.3d at 645 (comparing *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 824 (6th Cir.2000) (articulating the standard as "when an attorney knows or reasonably should know") with *Red*

**B.     ANALYSIS**

**1.     Toray's Argument in Support of Sanctions**

Toray argues that sanctions are appropriate for two reasons:

(1)     Renner "abused the judicial process by intentionally misrepresenting facts and applicable law to this Court in hopes of creating unnecessary delay" and;

(2)     Renner "disregarded the risk that its actions would needlessly multiply proceedings by delaying a decision of this Court on the merits of Toray's Motion [to Dismiss or Transfer]."

(Doc. 42-2 at 8.)

Toray argues, *inter alia*, that Renner misrepresented the extent and nature of Toray's contacts with Ohio for purposes of opposing Toray's Motion to Dismiss or Transfer for lack of personal jurisdiction. Specifically, Toray points to Renner's argument that the indemnity agreement and business relationship between Toray and Alien is sufficient to support personal jurisdiction over Toray, despite the fundamental rule that personal jurisdiction must be evaluated on an individual party basis, and despite the fact that Toray and Alien had no business relationship beyond that of supplier and purchaser of a single machine. Toray contends, moreover, that Renner cited no applicable authority supportive of its unusual theory of personal jurisdiction.

Furthermore, Toray contends that Renner continued to assert its factually and legally unsupportable personal jurisdiction arguments even after the course of the proceedings revealed that the facts and theories upon which they relied would not support personal jurisdiction. As a result

---

*Carpet Studios*, 465 F.3d at 646 (articulating the standard quoted above – *i.e.*, intent or knowing disregard of the risk)). *Rentz* was issued after *Garner*, but the *Rentz* Court did not acknowledge the "tension" the Court identified in *Garner*, 554 F.3d at 645, or indicate that the "less-than-bad-faith-more-than-negligence" language it quoted from *Red Carpet Studios* resolves the tension. The Court need not take a position with respect to this issue in order to resolve this motion, and, accordingly, does not do so.

of Renner's unwarranted pursuit of meritless arguments, Toray asserts, the parties had to engage in numerous settlement conferences, including conferences where the attendance of Toray's Japan-based representatives was mandated, burdensome (and, ultimately, unproductive) jurisdictional discovery in Japan, and management of an ongoing litigation that should never have been filed in this jurisdiction. Toray argues that Renner's purpose in doggedly opposing its motion was to delay proceedings and interpose obstacles to the Court's resolution of the Renewed Motion to Dismiss or Transfer in order to burden Toray, and force Toray into Avery's legal battle with Alien. Toray asserts that Avery's (*i.e.*, Renner's) decision to voluntarily dismiss the case just as the motion was about to ripen, *i.e.*, before the Court could issue a ruling on the merits, is evidence of Renner's ulterior motives.[6]

### 2. Renner's Arguments in Opposition to Sanctions

In opposition to sanctions, Renner argues that its personal jurisdiction theory was valid, that it did not misrepresent the facts, and that any delays in the proceedings were at least equally attributable to Toray. Most importantly, Renner notes that Judge Polster expressly validated Renner's legal theory when he found that jurisdictional discovery would be necessary to resolve Toray's Motion to Dismiss or Transfer.

---

[6] Toray also contends that personal jurisdiction is dubious in the district in which Renner re-filed the case, the Northern District of California. (Doc. 45 at 4.) Although Renner contends that personal jurisdiction over Toray exists in the Northern District of California because Toray has an office there, Toray states that it does <u>not</u> have an office in California, and that Renner knows this fact from the deposition of Toray's Rule 30(b)(6) witness. (*Id*. at 4-5 (citing attached deposition testimony stating that Toray does not have an office in California).) If that is true, Toray may request sanctions from the judicial officer presiding over that action and may, indeed, have a substantial basis for such a request. It is not a fact, however, which can justify sanctions here.

### 3. Ruling

Judge Polster's orders, first staying briefing on, and then ultimately denying Toray's Motion to Dismiss or Transfer as premature are critical to the Court's analysis of the Motion for Sanctions. As to the first, there can be no dispute that, for many months, the delay in resolving Toray's Motion to Dismiss or Transfer was attributable to Judge Polster's decision to focus his efforts and those of the parties on settlement rather than motion practice. As to the second order, Judge Polster issued his order denying Toray's Motion to Dismiss or Transfer <u>after</u> Renner filed its brief in opposition to that motion. Thus, Judge Polster was fully aware of the legal and factual arguments Renner presented. Nonetheless, Judge Polster validated the essential basis of Renner's legal theory, stating that "it is . . . possible that Toray's indemnification, defense, and license-procurement obligations to, and corporate relationship with, Alien are contacts with Ohio sufficient to create personal or specific jurisdiction in this forum." (Doc. 24 at 4.) In other words, Judge Polster held that Alien's contacts with Ohio *might* be legally sufficient to support personal jurisdiction over Toray. Further, Judge Polster specifically stated that jurisdictional discovery would be appropriate. In fact, he said:

> Resolving the jurisdiction question in the Toray Case will require **extensive** and expensive discovery on the details of the indemnification, defense, and license-procurement provisions of the purchase contract, and on the nature of Toray's relationship to Alien.

(*Id*. (emphasis added).) This finding by Judge Polster, as well as his involvement in the procedural history of the case, informs the Court's analysis of the parties' conduct and the Motion for Sanctions.

Toray's indignant attitude toward this case is understandable given that it spent almost twenty months litigating personal jurisdiction, only to have Renner voluntarily dismiss the case just before the Court issued a substantive ruling regarding that issue. Fifteen of those twenty months, however, are primarily attributable to court-ordered settlement conferences and an attendant stay of all briefing

-11-

relating to or consideration of the Motion to Dismiss or Transfer. Then, as soon as the jurisdictional issue was framed for resolution by the Motion to Dismiss or Transfer, Judge Polster issued his order indicating that Renner's theory of personal jurisdiction might well be sufficient to justify the exercise of personal jurisdiction over Toray in Ohio. In light of Judge Polster's conclusions recognizing Renner's theory of personal jurisdiction, this Court cannot conclude that Renner intentionally or recklessly advanced a meritless legal theory during the period of Judge Polster's supervision of this case. The Court cannot sanction Renner for taking a position before Judge Polster which Judge Polster himself validated.

Similarly, because Judge Polster expressly stated that <u>extensive</u> jurisdictional discovery would be necessary to resolve the Motion to Dismiss or Transfer, the Court cannot conclude that Renner was over-reaching by requesting some jurisdictional discovery before abandoning its personal jurisdiction argument. Thus, the approximately three month period between the transfer of the case from Judge Polster to this Court, and the deposition in Japan, is defensible because it was both contemplated by Judge Polster and authorized by this Court. Indeed, as noted above, although counsel for Toray did argue in no uncertain terms at the initial conference before this Court that Renner's personal jurisdiction argument would fail after scrutiny by this Court, it also assented to jurisdictional discovery without objection.[7]

This leaves only a two month period the Court may consider in connection with Toray's sanctions request. While it may be true that Renner should have dismissed this case more quickly

---

[7] The Court recognizes that Toray's counsel's approach to this issue was likely motivated by respect for both judicial officers and a desire to work cooperatively with opposing counsel. While the Court is loath to discourage such professionalism, absent clear messages from counsel, this Court had no basis to conclude that Judge Polster's view regarding the need for discovery should be revisited.

once discovery failed to support the factual bases for its jurisdictional theory, as noted above, Toray agreed to a briefing schedule for supplemental briefing during this time period and, as the record in the *Avery v. Alien* case discloses during that period, Renner was engaged in preparations for, participation in, and post-hearing briefing related to a multi-day preliminary injunction hearing in that companion case. Perhaps Renner did, or should have, suspected from the start that its claim regarding a symbiotic relationship between Toray and Alien would not be borne out by the facts. The delay in ferreting-out that fact, however, is not wholly chargeable to Renner; judicial processes, including some to which Toray expressly agreed, prevented an earlier resolution of the questions posed by the Motion to Dismiss or Transfer.[8]

For all of these reasons, and particularly given the unusual circumstances related to transfer of this case from Judge Polster, the Court finds that Renner is not subject to sanctions. Accordingly, Toray's Motion for Sanctions is **DENIED**.[9]

---

[8] Importantly, Toray does not bring its motion under Rule 11 of the Federal Rules of Civil Procedure (presumably because it did not satisfy the prerequisites thereto). Thus it does not assert the mere absence of a viable legal or factual theory as grounds for sanctions – it asserts, and must establish, the multiplication of legal proceedings for improper purposes.

[9] While it denies Toray's motion for the reasons articulated herein, based on the facts the Court *now* knows to be true, it appears that the decision to file an action against Toray in this district was not a well informed one. It also agrees with Toray that Renner pushed the bounds of zealous advocacy when it (1) did not originally mark the *Avery v. Toray* and *Avery v. Alien* cases as related; (2) filed an action against Toray in the Northern District of California and stated in its opposition to the Motion for Sanctions that Toray "maintains an office" in the Northern District of California despite awareness that Toray's Rule 30(b)(6) witness expressly testified that Toray does not have an office in California; and (3) blamed all complications related to jurisdictional discovery on Toray even though the applicable procedures for deposing the Rule 30(b)(6) witness for a foreign corporation are established by the Rules of Civil Procedure and international law, and despite the fact that it was Avery who requested leave to conduct that very discovery. Taken alone, however, none of these actions caused the type of delay necessary to support sanctions under § 1927, especially since two of the three were not taken until the response to the Motion for Sanctions – proceedings Toray, not Renner, instituted.



### III. C<small>ONCLUSION</small>

For the foregoing reasons, Toray's *Motion for Sanctions* (Doc. 42) is **DENIED**.

**IT IS SO ORDERED.**

                                           **s/Kathleen M. O'Malley**
                                           **KATHLEEN McDONALD O'MALLEY**
                                           **UNITED STATES DISTRICT JUDGE**

**Dated: June 23, 2009**